RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 23a0004p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

UNITED STATES OF AMERICA,

                     *Plaintiff-Appellee*,

    *v.*

AARON LOINES,

                     *Defendant-Appellant*.

No. 22-3073

─────────────────

Appeal from the United States District Court for the Northern District of Ohio at Cleveland.
No. 1:20-cr-00293-2—Donald C. Nugent, District Judge.

Argued: October 27, 2022

Decided and Filed: January 6, 2023

Before: COLE, CLAY, and MATHIS, Circuit Judges.

─────────────────

## COUNSEL

─────────────────

**ARGUED:** John J. Spellacy, JOHN J. SPELLACY & ASSOCIATES, CO., Cleveland, Ohio, for Appellant. Matthew B. Kall, UNITED STATES ATTORNEY'S OFFICE, Cleveland, Ohio, for Appellee. **ON BRIEF:** John J. Spellacy, JOHN J. SPELLACY & ASSOCIATES, CO., Cleveland, Ohio, for Appellant. Matthew B. Kall, UNITED STATES ATTORNEY'S OFFICE, Cleveland, Ohio, for Appellee.

─────────────────

## OPINION

─────────────────

CLAY, Circuit Judge. Defendant Aaron Loines appeals the district court's denial of his pretrial motion to suppress preceding his guilty plea to controlled substance offenses in violation of 21 U.S.C. §§ 846, 841(a)(1), 841(b)(1)(C); and a firearm offense in violation of 18 U.S.C.

§ 924(c)(1)(A).   For the reasons set forth below, the Court **REVERSES** the district court's denial of Loines' motion to suppress, **VACATES** his conviction, and **REMANDS** the case for further proceedings consistent with this opinion.

## I.  BACKGROUND

### A.  Factual Background

In 2020, Detective Donald Kopchak of the Cleveland Police Department was aiding in an investigation into potential drug trafficking activities by Mekhel Rivers, who was subsequently charged as a co-defendant.  Police investigators suspected Rivers of distributing heroin and fentanyl.  During the investigation, on April 21, 2020, Kopchak observed Rivers leaving a house on East 221st Street, in Euclid, Ohio, driving a red Nissan Ultima to a meeting place to sell drugs to an informant, and then returning to the same Euclid house.  After numerous days of surveillance, investigators determined that Rivers lived at the East 221st Street house, obtained a search warrant for the house, and executed the warrant on April 30, 2020.

After arrving at the house, while executing the search warrant, Kopchak again observed the red Nissan Ultima parked on the street near the residence, bearing the same license plate number he previously observed.  Kopchak walked up to the passenger side of the car, cupped a hand to the tinted window,[1] and leaned in to attempt to see into the vehicle.  While leaning against the vehicle and looking through the window, Kopchak allegedly observed a Black and Mild cigar wrapper and "a folded piece of paper" in the center console of the car.  (Tr. of Mot. to Suppress Hr'g, R. 142, Page ID #729).  From this vantage point, Kopchak claims he was also able to view a small plastic bag that he immediately identified as "a bag of dope."  (*Id.* at Page ID ##726, 729).  Lieutenant Charles DiPenti approached the car's passenger side, looked through the window, and verbally indicated that he also saw the "bag of dope."  (*Id*. at Page ID #728).

After Kopchak purportedly saw the "bag of dope" in the vehicle, he went into the East 221st Street residence.  Officers found Loines in Rivers' residence, along with other individuals

---

[1]In Ohio, side windows may be tinted, but they must permit fifty percent of the light through.  Ohio Admin. Code § 4501-41-03(A)(3).  The government does not argue that Loines' tinted windows were in violation of Ohio law.

implicated in this case. Kopchak read the individuals their *Miranda* rights and inquired about car keys found in the home. In response, Loines volunteered that the keys were his. Kopchak then confirmed that the car keys belonged to the Nissan by using the key to sound the car alarm.

The car was then towed for an inventory search. During the inventory search of the inside of the car, the officers took a picture of the car's center console from the driver's seat. That picture showed a small plastic bag underneath a cigar wrapper, with a lottery ticket placed beside it. Law enforcement searched the vehicle after it was towed and found a firearm, the bag of suspected narcotics, a larger bag of purported narcotics,[2] a press,[3] and a scale. Police did not obtain a warrant to search the automobile before or during the investigation.

Loines moved to suppress the evidence seized from his vehicle, and during the motion to suppress hearing, Kopchak sought to justify the warrantless search by averring that he had probable cause to search the vehicle based on the "plain view" of the "bag of dope." Kopchak was the only witness called to testify at the hearing. To support Kopchak's testimony that he saw the "bag of dope" in plain view and thus had probable cause to search the vehicle, the government relied upon: (1) videos of Kopchak and other officers walking around and peering into the car; and (2) a photo taken while *inside* the car from the vantage point of one sitting in the driver's seat.

Based on Kopchak's testimony, the videos provided evidence of where the car was in proximity to the East 221st Street residence, Kopchak's position looking into the passenger side window of the car, and Kopchak's claim that he saw a "bag of dope." (Tr. of Mot. to Suppress Hr'g, R. 142, Page ID # 721–26). The videos also provide Lieutenant DiPenti's perspective

---

[2]The government has not provided information as to whether the bags found in the vehicle contained controlled substances. The only information found on the record as to whether a controlled substance was found in the vehicle is by the government in its response to the Defendant's motion to suppress in the court below. The government contends that approximately "70+ of heroin" appeared in the bags and includes a footnote stating that "[t]he lab tests on this substance showed no scheduled controlled substance." (Resp. to Mot. to Suppress, R. 61, Page ID # 338). There is no additional information offered as to what "70 + of heroin" means, or if any lab test was performed to confirm that the bags found in the car contained controlled substances. However, this issue is not on appeal. Because the Court finds that the vehicle was not lawfully searched, we need not address whether officers actually found narcotics in the vehicle.

[3]Kopchak defines a press as an object used by drug traffickers to combine, by means of compacting, different substances together, to prepare the finished product for sale.

when looking through the passenger side window, without pressing his hands against the window, confirming Kopchak's observation.  The photograph taken from the *inside* of the vehicle illustrates a lottery ticket, cigar wrapper, and beneath the cigar wrapper, a small plastic bag.  At issue, however, is whether Kopchak and DiPenti could actually see the small plastic bag from outside of the car.

The government claims that the officers' body camera footage and associated screenshots "show[] that a person standing next to the car could see through the window, even though it was partially tinted."  (Resp't's Br., ECF No. 15, 14).  Furthermore, the government contends that while no cameras were "positioned at the proper angle to show the suspected drugs," the videos establish that an officer could see inside the car.  (*Id*. at 15).  Neither proposition is convincing.  The videos themselves do not establish that Kopchak, from his vantage point outside the vehicle, had a sufficiently clear view to identify the presence of drugs inside the car.  Instead, the videos show only the position of the officers when peering into the vehicle.  In an attempt to provide a better illustration of what was seen from outside the car, screenshots of the video were provided by the government in their appellate briefing; however, those screenshots are dark to the point of being indecipherable.  Besides conclusory statements as to what officers saw, the government has furnished no evidence to establish that the photo taken from inside the car was an accurate depiction of what was seen from outside the vehicle.

## B.  Procedural History

A grand jury indicted Loines in the underlying matter on June 11, 2020.  The grand jury charged Loines with the following: one count of Conspiracy to Distribute and Possess with Intent to Distribute Controlled Substances in violation of 21 U.S.C. § 846; one count of Possession with Intent to Distribute Controlled Substances in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C); and one count of Possession of a Firearm in Furtherance of a Drug Trafficking Crime in violation of 18 U.S.C. § 924(c)(1)(A)(i).

Loines filed a motion to suppress on December 22, 2020, contending that the investigating officers conducted an unlawful warrantless search of his vehicle and any inventory search of the vehicle in question was done improperly.  After the government filed its response,

and Loines filed his reply, the district court conducted a suppression hearing on May 17, 2021. Kopchak was the only witness in the hearing; and the government introduced, without objection, three videos and one picture. After listening to the testimony and considering the evidence, the court orally denied Loines' suppression motion.

On September 13, 2021, Loines pleaded guilty to all three counts pursuant to a plea agreement, and reserved the right to appeal the district court's denial of his motion to suppress. The district court sentenced Loines to 93 months' imprisonment, after which Loines filed this timely appeal.

## II.  DISCUSSION

### A.  Standard of Review

The Court reviews a district court's decision on a suppression motion for clear error as to factual findings and *de novo* as to conclusions of law. *United States v. Jenkins*, 396 F.3d 751, 757 (6th Cir. 2005). Because the appeal of the district court's denial of Loines' suppression motion is based on factual findings, this Court reviews the decision for clear error. *See id.* "Clear error will be found only when the reviewing court is left with the definite and firm conviction that a mistake has been committed." *Max Trucking, LLC v. Liberty Mut. Ins. Corp.*, 802 F.3d 793, 808 (6th Cir. 2015) (citing *Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985)).

"Whether a search was reasonable under the Fourth Amendment is a question of law which is reviewed *de novo*." *United States v. Pearce*, 531 F.3d 374, 379 (6th Cir. 2008) (citing *United States v. Blair*, 524 F.3d 740, 747 (6th Cir. 2008)). "When a district court has denied the motion to suppress, we must 'consider the evidence in the light most favorable to the government.'" *Id*. (quoting *United States v. Carter*, 378 F.3d 584, 587 (6th Cir. 2004) (en banc)).

### B.  Analysis

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be

violated[.]" U.S. Const. amend. IV. "The basic purpose of this Amendment, as recognized in countless decisions of [the Supreme] Court, is to safeguard the privacy and security of individuals against arbitrary invasions by governmental officials." *Camara v. Mun. Ct. of City & Cnty. of S.F.*, 387 U.S. 523, 528 (1967). "[S]earches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." *Katz v. United States*, 389 U.S. 347, 357 (1967) (internal citations omitted). The government bears the burden of demonstrating that an exception to the warrant requirement applies. *United States v. Jeffers*, 342 U.S. 48, 51 (1951).

Kopchak's entrance into the car to obtain evidence necessary to indict Loines was subject to the Fourth Amendment protections. The interior of a vehicle is a constitutionally protected area, into which a government official is not permitted to intrude without probable cause. *See New York v. Class*, 475 U.S. 106, 114–15 (1986) ("[A] car's interior as a whole is [ ] subject to Fourth Amendment protection from unreasonable intrusions by the police."); *United States v. Jones,* 565 U.S. 400, 404 (2012) ("It is beyond dispute that a vehicle is an 'effect' as that term is used in the [Fourth] Amendment.") (quoting *United States v. Chadwick*, 433 U.S. 1, 12 (1977)). Officers found the evidence used to indict Loines inside of Loines' vehicle and without a warrant. Accordingly, for the search to be reasonable, an exception to the warrant requirement must apply. *See Katz*, 389 U.S. at 357. The government asserts that Kopchak's conduct was permissible under two exceptions: the "plain view doctrine" and the "automobile exception." *See Maryland v. Dyson*, 527 U.S. 465, 466–67 (1999) (per curiam); *Minnesota v. Dickerson*, 508 U.S. 366, 374–75 (1993). Neither asserted exception applies in this case.[4]

---

[4]Loines argues that the inventory search exception does not apply in this case. However, the inventory search exception is not properly before this Court. The government explicitly waived the inventory search exception argument, stating "the government . . . is not relying on [the inventory search exception] directly in this appeal." (Resp't.'s Br., ECF No. 15, 18). To preserve an issue for appellate review, a party must develop its argument in its appellate briefing; a requirement that the government does not meet on this issue. *Puckett v. Lexington-Fayette Urb. Cnty. Gov't*, 833 F.3d 590, 610–11 (6th Cir. 2016); *see also Bolden v. City of Euclid*, 595 F. App'x 464, 468 (6th Cir. 2014).

**1. Plain View Doctrine**

The government argues that the bag with the narcotics was in plain view. This claim has not been substantiated.

"Warrantless seizures presumptively violate the Fourth Amendment, but under certain circumstances an officer may seize evidence in plain view without a warrant." *United States v. Mathis*, 738 F.3d 719, 732 (6th Cir. 2013) (citing *Arizona v. Hicks*, 480 U.S. 321, 326–27 (1987)). "[O]bjects falling in the plain view of an officer who has a right to be in the position to have that view are subject to seizure and may be introduced in evidence." *Harris v. United States*, 390 U.S. 234, 236 (1968) (citations omitted). Under the plain view doctrine, four factors must be satisfied: "(1) the item seized must be in plain view, (2) the item's incriminating character must be immediately apparent, (3) the officer must lawfully be in the place from where the item can be plainly seen, and (4) the officer must have a lawful right of access to the item." *Mathis*, 738 F.3d at 732 (citing *Horton v. California*, 496 U.S. 128, 136–37 (1990)). Loines argues that the first three elements of the standard are not met; because the Court finds that the plain view doctrine does not apply in this case, it does not need to reach a determination as to the fourth factor, which is not argued by either party.

*a. Plain View*

Officer Kopchak testified that he looked through the red Nissan's passenger side window and saw a "bag of dope" in plain view in the car's center console. To support Kopchak's testimony, the government points to the photograph taken from inside the vehicle, body camera footage, and screenshots taken from the body camera footage. However, Kopchak provides no testimony or evidence as to what was seen of the small, partially obstructed bag from outside the vehicle. Instead, he simply asserts that he saw a "bag of dope." (Tr. of Mot. to Suppress Hr'g, R. 142, Page ID #731–32).

For the object to be in plain view, Kopchak's view of the bag must have been from his vantage point outside the passenger side window. Moreover, he "must discover incriminating evidence 'inadvertently'. . . he may not 'know in advance the location of [certain] evidence and

intend to seize it,' relying on the plain view doctrine only as a pretext."  *Texas v. Brown*, 460 U.S. 730, 737 (1983) (quoting *Coolidge v. New Hampshire*, 403 U.S. 443, 470 (1971)).

The government's evidence purported to establish that the plastic bag was plainly visible from outside the vehicle is deficient, and instead, leads to the opposite conclusion.  First, a photograph taken *inside* the vehicle from the vantage point of the driver, is insufficient to demonstrate the bag was visible from *outside* the car.  The only objective evidence provided by the government illustrating the view from outside the vehicle are three videos from body camera footage, and two screenshots from those videos.  The body camera videos simply provide the position of the car and each officer, but do not provide the Court with what Kopchak saw when observing the inside of the vehicle.  The screenshots of the footage are dark, the center console is barely visible, and there is no clear view into the interior of car through the passenger side window.  The screenshots display no small plastic bag, no lottery ticket, and no cigar wrapper.

Kopchak's testimony provides support for the Court's observation:  he states that the twisted plastic was not apparent in the "still frame . . . but there's another picture that was taken of the center console with the bag of dope . . . . packaged . . . in those small plastic bags with the tie off."  (Tr. of Mot. to Suppress Hr'g, R. 142, Page ID #729, 731).  This other picture referenced in Kopchak's testimony is the photograph taken during the inventory search from inside the car.  Kopchak did not provide testimony as to what he saw from outside the vehicle, except for the simple statement that he saw a "bag of dope."  (Tr. of Mot. to Suppress Hr'g, R. 142, Page ID #731–32).

Accordingly, the only evidence supporting the government's position is Kopchak's own unsupported testimony that he saw a bag of narcotics.  Simple statements from the officers contending that they saw "a bag of narcotics" in the car are not enough to establish that an object was in plain view when the screenshots that the government presented contradict the officers' statements.  This Circuit recognizes that when evaluating an application of the plain view doctrine, an officer's testimony can be "sufficient to establish that the [incriminating evidence] was visible from outside the car."  *United States v. Galaviz*, 645 F.3d 347, 356–57 (6th Cir. 2011).  In *Galaviz* the government provided photographic evidence that the incriminating evidence was visible from outside the car; however, the photo was taken from inside the car at a

position below the window. *Id.* The court acknowledged that the photo provided by the government was insufficient to show that the incriminating evidence was visible from outside the car, but ultimately found that the testimony provided by the officer was enough to prove the object was in plain view. *Id.* However, in *Galaviz*, no evidence contradicted the officer's statement. This case is distinguishable in that the photos provided by the government illustrate that it was implausible for an individual to view the "bag of dope" from outside the car, thereby directly contradicting the officer's testimony. The government offers no plausible explanation as to how the officers could see the "bag of dope" through the tinted window, but the cameras could not capture any view into the interior of the car. Had the photo corroborated Kopchak's testimony, *Galaviz* would apply.

Kopchak, based on his prior observations of the vehicle at issue, may have had a strong suspicion about the contents of the car, but without any incriminating evidence being in plain view from outside of the car, Kopchak did not have lawful access to the contents of the car. *See Brown*, 460 U.S. at 737. In sum, from the vantage point of an individual looking through the passenger side window from outside the vehicle, the plastic bag was not in plain view. We acknowledge that under the clear error standard, if "the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though [the court may be] convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." *Anderson*, 470 U.S. at 573–74. But even given the great deference afforded to the district court under the clear error standard, the photographic evidence provided by the government does not establish that the "bag of dope" was in plain view. In fact, the photographs plainly and directly contradict the officer's testimony.

We find that the district court's account of the evidence is not plausible in light of the record viewed in its entirety. Accordingly, the Court reverses the district court's holding as to the denial of Defendant's motion to suppress.

### b. Incriminating Nature is Immediately Apparent

The government argues that "the way that the powder was packaged and its proximity to a folded lottery ticket—commonly used to deliver drugs—made the powder's incriminating character obvious." (Resp't's Br., ECF No. 15, 20). We disagree.

To determine whether an object's incriminating nature is "immediately apparent," the Court looks to four instructive factors:

> (1) a nexus between the seized object and the items particularized in the search warrant; (2) whether the 'intrinsic nature' or appearance of the seized object gives probable cause to believe that it is associated with criminal activity; (3) whether the executing officers can *at the time* of discovery of the object on the facts then available to them determine probable cause of the object's incriminating nature; . . . . [and (4) whether the officer can] recognize the incriminating nature of an object as a result of his immediate or instantaneous sensory perception.

*United States v. Garcia*, 496 F.3d 495, 510–11 (6th Cir. 2007) (emphasis in original) (quotations and citations omitted). "Requiring that evidence be 'immediate' and 'apparent' constrains the expansion of the limited search authorized by the warrant into a generalized search, and it prevents officers from having an opportunity to create a reason to expand the search." *United States v. McLevain*, 310 F.3d 434, 440 (6th Cir. 2002) (quoting *United States v. McLernon*, 746 F.2d 1098, 1125 (6th Cir. 1984)). In considering whether evidence was "apparent" to the executing officers, courts "should be duly mindful of the executing officers' particular, subjective training and experiences." *United States v. Szymkowiak*, 727 F.2d 95, 98 (6th Cir. 1984) (first citing *Brown*, 460 U.S. at 745–46 (Powell, J., concurring); and then citing *United States v. Cortez*, 449 U.S. 411, 418 (1981)); *see also United States v. Pacheco*, 841 F.3d 384, 395–96 (6th Cir. 2016). Probable cause "merely requires that the facts available to the officer would 'warrant a man of reasonable caution in the belief' . . . that certain items may be contraband or stolen property or useful as evidence of a crime . . . ." *Brown*, 460 U.S. at 742 (first quoting *Carroll v. United States*, 267 U.S. 132, 162 (1925); and then citing *Brinegar v. United States*, 338 U.S. 160, 176 (1949)).

Applying the first factor articulated in *Garcia*, neither Loines nor the vehicle were subject to the search warrant in this case. *See Garcia*, 496 F.3d at 510 ("Requiring particular

descriptions in search warrants prevents police officers from engaging in general exploratory searches[.]" (citing *Coolidge*, 403 U.S. at 465)). Therefore, there is no nexus between Loines' vehicle, parked away from the house, and the items particularized in the search warrant. Even though the intention of the warrant was to locate controlled substances, the warrant did not permit law enforcement to search beyond the geographical location described within. This is especially true considering the officers had ample opportunity to obtain a valid warrant for the vehicle. *See Garcia*, 496 F.3d at 510; *Coolidge*, 403 U.S. at 465. "An overbroad reading of the immediately apparent requirement subverts and jeopardizes fundamental Fourth Amendment principles." *Garcia*, 496 F.3d at 510.

As to the remaining *Garcia* factors, the government relies on two cases to support its claim that the bag containing the alleged heroin was "immediately apparent." First the government analogizes to *Brown*, where an officer conducting a routine driver's license checkpoint saw narcotics in plain view after the defendant removed his hand from his pocket to retrieve his license, and dropped on the floor an "opaque, green party balloon, knotted about one half inch from the tip." *Brown*, 460 U.S. at 733. The officer alleged that his previous experience making arrests for drug offenses informed him that the dropped substance was a narcotic. *Id.* at 734. The officer's knowledge of how narcotics are packaged, and the appearance of the balloon, without knowledge of the contents, were enough to establish that the officer properly seized the narcotics under the plain view exception. *Id.* at 743–44. Second, the government references *Pacheco*, where an officer conducting a protective frisk of an individual during a traffic stop felt a solid "brick-like object protruding approximately one inch out of [the defendant's] cargo pocket" and determined that the object was "around six-to-eight inches long." *Pacheco*, 841 F.3d at 395. The court found that because the object's incriminating nature was readily apparent, the seizure was appropriate under the plain view exception. *Id.* at 396.

The government argues that that Kopchak was able to identify the "bag of dope" immediately as the twisted end of the bag resembled items from earlier in the investigation, and the lottery ticket's presence corroborated his belief that the plastic he could see was a bag of narcotics. Further, the government asserts that given Kopchak's extensive experience in the field, and that Kopchak had participated in a controlled buy on April 21, 2020, during which

time Rivers used the vehicle to sell drugs to an informant in a package almost identical to the one seen in this search, the incriminating nature of the plastic bag was readily apparent.

However, as discussed above, from the vantage point of the street, or through the Nissan's tinted windows, the purported bag of narcotics is not visible. What Kopchak saw of the plastic bag from outside the vehicle, besides a simple statement that he saw a "bag of dope," has not been established on the record. However, assuming Kopchak could see inside the car, he testifies that he could see a Black and Mild cigar wrapper and a lottery ticket from outside the vehicle. Neither are "intrinsically incriminating." *McLevain*, 310 F.3d at 442–43. Officers are not authorized to seize items "*merely* because [they are] in 'plain view.'" *Id.* at 441 (emphasis in original) (quoting *McLernon*, 746 F.2d at 1125). "[L]awful and innocuous items" cannot be seized under the plain view exception without an immediately apparent association between the items and the purported criminal activity. *Garcia*, 496 F.3d at 511; *see also McLernon*, 746 F.2d at 1125 (The officer's immediate perceptions must produce more than "visual images of . . . 'intrinsically innocent' items." (citations omitted)). Innocuous items that could be used for criminal activity are not enough to establish probable cause. *See United States v. Beal*, 810 F.2d 574, 577 (6th Cir. 1987).

Kopchak does not claim to have seen narcotics or any residue on the lottery ticket, makes no claim that the cigar wrappers could be contraband, and provides no description of the plastic bag from outside the vehicle. It was not until the officers entered the vehicle and closely inspected the center console, that the "bag of dope" was observed to be apparently incriminating. This close inspection of the inside of the car constituted a further search unsupported by probable cause. *See United States v. Tatman*, 397 F. App'x 152, 175 (6th Cir. 2010) ("[W]hen an item appears suspicious to an officer but further investigation is required to establish probable cause as to its association with criminal activity, the item is not immediately incriminating."(quoting *McLevain*, 310 F.3d at 443)); *see also Beal*, 810 F.2d at 577. In *Pacheco*, the officer felt a solid, brick-like object that was six to eight inches long, whereas in this case, the purported bag of narcotics is not seen, or descriptively identified, except for the photograph taken inside the vehicle. *See Pacheco*, 841 F.3d at 395–96. Similarly, in *Brown*, the officer, with the aid of a flashlight, clearly saw an opaque, green party balloon drop from the defendant's hand. *See*

*Brown*, 460 U.S. at 733–34. In this case, by contrast, the purported bag of narcotics was not apparent when officers looked into the car from the tinted windows.

The objects purportedly seen by Kopchak were not immediately and apparently incriminating. Accordingly, the officers lacked probable cause to search the vehicle. *See Beal*, 810 F.2d at 578 ("[T]his circuit has vigorously adhered to the requirement that probable cause must be both immediate and apparent.").

### c. *Legally Present*

Loines argues that Kopchak committed trespass when he cupped his hand or hands against the Nissan's tinted windows to see inside Loines' vehicle, and therefore, Kopchak's touching of the car is per se unreasonable under the Fourth Amendment. Because we find that the objects claimed to be seen by Kopchak were not in plain view, the Court need not determine whether he was legally permitted to place his hand on the car window to facilitate or enhance his view of the inside of the car.

## 2. Automobile Exception

Under the automobile exception, officers may search a vehicle without a warrant if they have "probable cause to believe that the vehicle contains evidence of a crime." *United States v. Smith*, 510 F.3d 641, 647 (6th Cir. 2007) (first quoting *United States v. Lumpkin*, 159 F.3d 983, 986 (6th Cir. 1998); and then citing *Smith v. Thornburg*, 136 F.3d 1070, 1074 (6th Cir.1998)). Traditionally, this exception was based on the "ready mobility" of the automobile, which created "an exigency sufficient to excuse failure to obtain a search warrant once probable cause to conduct the search [was] clear." *Pennsylvania v. Labron*, 518 U.S. 938, 940 (1996) (quoting *California v. Carney*, 471 U.S. 386, 390–91 (1985)). More recent cases no longer require that the automobile exception rest on an independent showing of exigency, because "[e]ven in cases where an automobile was not immediately mobile, the lesser expectation of privacy resulting from its use as a readily mobile vehicle justified application of the vehicular exception." *Smith*, 510 F.3d at 647 (quoting *Carney*, 471 U.S. at 391).

The government argues that Kopchak's belief that the vehicle contained evidence of a crime was based on the "bag of dope" seen in plain view. Therefore, according to the government's argument, Kopchak was only legally permitted to search the inside of the vehicle under the automobile exception if the plain view exception applied. As indicated above, because the "bag of dope" was not in plain view, there was no probable cause to search the vehicle, and thus, the government does not properly satisfy the automobile exception.

### III.  CONCLUSION

For the reasons set forth above, this Court **REVERSES** the district court's denial of Defendant's motion to suppress, **VACATES** his conviction, and **REMANDS** the case for further proceedings consistent with this decision.