NOT RECOMMENDED FOR PUBLICATION
File Name: 24a0439n.06

No. 23-3736

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

FILED
Oct 31, 2024
KELLY L. STEPHENS, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF OHIO |
| | ) | |
| LELON CAMPBELL, | ) | |
| Defendant-Appellant. | ) | |
| | ) | OPINION |
| | ) | |

Before: CLAY, WHITE, and NALBANDIAN, Circuit Judges.

PER CURIAM. Lelon Campbell appeals his jury conviction and below-guidelines sentence for drug offenses. As set forth below, we deny Campbell's request to remove his appointed counsel and strike the brief filed by counsel. We affirm the district court's judgment.

**I.**

In June 2018, officers with the Cincinnati Police Department began investigating Campbell after receiving information that he was distributing heroin. On June 8, 2018, the officers arranged for a confidential informant to conduct a controlled purchase of heroin from Campbell. The substance sold by Campbell to the confidential informant tested positive for fentanyl rather than heroin. Based on this controlled purchase, the officers obtained a search warrant to provide real-time GPS tracking and ping location information for the cell phone that Campbell used to facilitate the controlled purchase. The ping location data connected Campbell to a residence on Meadowind Court in Cincinnati, where the officers observed him coming and going as though he lived there. Later, in early October 2018, the officers received an anonymous drug complaint about an address

on 69th Street in Cincinnati; confidential sources provided information that Campbell was selling drugs out of that address. The officers conducted surveillance at the 69th Street location and observed Campbell conducting several hand-to-hand transactions over the course of multiple days.

Based on their investigation, the officers obtained a warrant to search the 69th Street and Meadowind Court addresses for evidence related to Campbell's drug trafficking. When the officers executed the search warrant at the 69th Street address on October 18, 2018, they found Campbell on an air mattress in the front living room. Near the air mattress was a cabinet with two firearms on top of it and bags of narcotics inside a drawer. Subsequent testing determined that those drugs included 179.1 grams of a mixture containing fentanyl and fentanyl analogues, 34.7 grams of cocaine, and 5.4 grams of methamphetamine. The officers found additional items related to drug trafficking throughout the 69th Street residence, including sandwich bags, scales, cutting agents, Narcan, and syringes. They discovered three duffel bags, containing 15 firearms, in the basement. At the Meadowind Court address, the officers seized approximately $47,000 from a safe and recovered a handgun from a vehicle parked outside.

A federal grand jury returned an indictment charging Campbell with drug and firearm offenses. Campbell moved to suppress the evidence seized from the 69th Street and Meadowind Court addresses and for an evidentiary hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978). While those motions were pending, Campbell moved to dismiss the indictment for violating his right to a speedy trial under the Sixth Amendment and the Speedy Trial Act, 18 U.S.C. §§ 3161–3174. The district court granted Campbell's motion for a *Franks* hearing and denied his motion to dismiss. After the evidentiary hearing, the district court denied his motion to suppress.

A federal grand jury returned a superseding indictment charging Campbell with distribution of a controlled substance on June 8, 2018, when he sold fentanyl to the confidential

informant, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C) and 18 U.S.C. § 2 (Count 1); possession with intent to distribute controlled substances based on the fentanyl and cocaine recovered from the 69th Street residence on October 18, 2018, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B)-(C) (Counts 2 and 3); and possession of firearms by a felon and in furtherance of drug-trafficking offenses, in violation of 18 U.S.C. §§ 2, 922(g)(1) and 924(c) (Counts 4 and 5).[1] Campbell proceeded to trial on the superseding indictment. The jury found him guilty of the drug counts and not guilty of the firearm counts. Campbell filed a motion for a judgment of acquittal, which the district court denied.

Campbell's presentence report set forth a base offense level of 30 based on the converted drug weight attributed to him. *See* USSG § 2D1.1(a)(5), (c)(5). The presentence report applied three two-level enhancements to that offense level for (1) possessing a firearm, (2) making a credible threat to use violence, and (3) maintaining a premises for the purpose of distributing a controlled substance. *See* USSG § 2D1.1(b)(1), (2), (12). According to the presentence report, Campbell qualified as a career offender based on his current and prior felony convictions for controlled-substance offenses. *See id.* § 4B1.1. But because the drug offense level (36) was greater than the career-offender offense level (34), the drug offense level applied. *See id.* § 4B1.1(b). Both Campbell's criminal history score and his status as a career offender established a criminal history category of VI. The presentence report set forth a Sentencing Guidelines range of 324 to 405 months of imprisonment based on a total offense level of 36 and a criminal history category of VI.

---

[1] The superseding indictment also charged Campbell with using or maintaining a premises for the purpose of distributing controlled substances, in violation of 21 U.S.C. § 856(a)(1) (Count 6). The district court severed that count before trial.

Among his objections to the presentence report, Campbell challenged the application of the three two-level enhancements. The district court overruled Campbell's objections. Expressing its concern with the use of acquitted conduct to apply the firearm enhancement, the district court concluded that a downward variance from the guidelines range of 324 to 405 months was warranted. According to the district court, a downward variance from the career-offender range (262 to 327 months) was also appropriate because the predicate offenses for Campbell's status as a career offender "involved relatively small amounts of controlled substances." The district court ultimately sentenced Campbell to 204 months of imprisonment followed by ten years of supervised release.

This timely appeal followed. Campbell's appointed appellate counsel filed a brief addressing six issues: (1) the use of acquitted conduct at sentencing violated Campbell's Sixth Amendment right to a jury trial, (2) the district court erred in denying Campbell's motion to suppress evidence, (3) a police officer should not have been allowed to testify as both a fact and opinion witness, (4) the admission of prior alleged drug sales was improper other-acts evidence, (5) the district court denied Campbell's right to a speedy trial, and (6) the district court erred in applying the sentencing enhancement for maintaining a drug premises. Campbell then moved to remove counsel and strike the brief, asserting that the brief was filed without his knowledge or approval. Counsel filed a response to Campbell's motion, asserting that Campbell was consulted on the brief and had notice of the final draft, and therefore, in counsel's opinion, there was no basis to withdraw. Counsel subsequently filed a motion to allow Campbell to file a pro se supplemental brief, which we granted. We later directed Campbell, in supplemental filings, to "identify the specific issues in the brief by counsel on your behalf that you seek to abandon, and what specific issues you would raise instead," and to "explain why you think the brief filed by counsel is

inadequate." In response, Campbell asserted that there are "no issues that I wish to abandon" and that he would like to raise additional issues about the sufficiency of the evidence to support Counts 2 and 3, the government's failure to disclose its financial contract with the confidential informant, the staleness of Count 1, and the use of his prior convictions to enhance the statutory penalties.

Although Campbell asked for counsel's removal, he failed to explain how the brief filed by counsel was inadequate and instead asserted that he did not wish to abandon any of the issues raised by counsel. We will therefore deny Campbell's request to remove counsel and strike counsel's brief and will address the issues raised by counsel—and do so in the order in which they arose below. As for Campbell's pro se arguments, "we may properly decline to consider pro se claims brought by a defendant represented by counsel on appeal." *United States v. Fontana*, 869 F.3d 464, 472 (6th Cir. 2017). That is because "[a] defendant must present a single brief, not two." *Id.* Nonetheless, we will address some of Campbell's pro se arguments at the end of this decision.

**II.**

**A.      Motion to Suppress**

Following the evidentiary hearing, the district court denied Campbell's motion to suppress the evidence seized by law enforcement following the execution of the search warrant at the 69th Street and Meadowind Court addresses. We review "a district court's decision on a suppression motion for clear error as to factual findings and *de novo* as to conclusions of law." *United States v. Loines*, 56 F.4th 1099, 1105 (6th Cir. 2023). Where, as here, the district court denied the motion to suppress, we consider the evidence in the light most favorable to the government. *United States v. Snoddy*, 976 F.3d 630, 633 (6th Cir. 2020).

### 1. 69th Street

With respect to the search warrant for the 69th Street location, Campbell argues that statements in the supporting affidavit were made with reckless disregard for the truth and that, without those statements, the affidavit failed to establish probable cause to issue the warrant. If a defendant establishes by a preponderance of the evidence that a statement in an affidavit was made with reckless disregard for the truth, "and, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit." *Franks*, 438 U.S. at 156. "A law enforcement officer's statement is only considered to be issued with reckless disregard for the truth if a defendant shows that the affiant subjectively entertained serious doubts as to the truth of his or her allegations." *United States v. Bateman*, 945 F.3d 997, 1008 (6th Cir. 2019) (cleaned up). "The determination as to whether a statement made in an affidavit is made with reckless disregard for the truth is a fact question." *United States v. Rice*, 478 F.3d 704, 709 (6th Cir. 2007).

In his affidavit in support of the search warrant, Officer Nicholas Casch stated that, on October 2, 2018, officers received an anonymous drug complaint about the 69th Street address and began to conduct covert surveillance at that location. According to Officer Casch, officers observed Campbell conducting several hand-to-hand transactions in front of the 69th Street location on multiple dates: October 2, 3, 11, and 15. Campbell contends that, although Officer Casch "appeared to allege that he saw these matters first person," the officer admitted at the hearing that he was out of town on some of those dates. But Officer Casch's affidavit did not misrepresent his firsthand knowledge. The affidavit stated that "officers" or "brother officers" observed Campbell conducting these transactions. Campbell also asserts that the photographs provided by

Officer Casch did not capture any hand-to-hand transactions. Again, Officer Casch did not misrepresent this fact. Officer Casch's affidavit merely stated that, on October 15, officers observed and photographed Campbell entering the residence and then returning outside to meet with customers. Thus, Campbell failed to show that any statements in Officer Casch's affidavit regarding the 69th Street residence were made with reckless disregard for the truth.

### 2. Meadowind Court

Campbell argues that Officer Casch's affidavit failed to establish a connection between the address on Meadowind Court, which was his mother's home, and any criminal activity. "[B]ecause the Fourth Amendment requires a search warrant to describe particularly the place to be searched and the persons or things to be seized, the affidavit supporting the search warrant must demonstrate a nexus between the evidence sought and the place to be searched." *United States v. Brown*, 828 F.3d 375, 382 (6th Cir. 2016) (citing *United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004) (en banc)).

But even if the affidavit lacked a sufficient nexus to support a finding of probable cause, the district court properly denied Campbell's motion to suppress based on the good-faith exception in *United States v. Leon*, 468 U.S. 897 (1984). Under *Leon*, the exclusionary rule does not "bar the admission of evidence seized in reasonable, good-faith reliance on a search warrant that is subsequently held to be defective." *Id*. at 905. (internal quotation marks omitted). We review *de novo* whether the good-faith exception applies. *United States v. O'Neill*, 94 F.4th 531, 538 (6th Cir. 2024), *cert. denied*, No. 24-5074, 2024 WL 4427322 (U.S. Oct. 7, 2024).

Campbell contends that the good-faith exception does not apply because Officer Casch's affidavit was a "bare-bones affidavit"—that is, "an affidavit 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.'" *United States v. Sanders*,

106 F.4th 455, 468 (6th Cir. 2024) (en banc) (quoting *Leon*, 468 U.S. at 923). But "[e]ven if an affidavit describing a suspect's drug activity does not establish a probable-cause nexus between the place to be searched and the evidence of that activity, the affidavit will avoid the bare-bones label so long as it identifies a 'minimally sufficient' nexus between the two." *United States v. Reed*, 993 F.3d 441, 450 (6th Cir. 2021). We have recognized that an affidavit provides a "minimally sufficient" nexus when it describes recent drug trafficking by the suspect, sets forth evidence of the suspect's residency, and explains the affiant's "experience with drug dealers keeping evidence of their dealing at their residences." *United States v. Neal*, 106 F.4th 568, 573–74 (6th Cir. 2024) (per curiam); *see also Reed*, 993 F.3d at 451–52.

Officer Casch's affidavit provided the "minimally sufficient" nexus between the Meadowind Court address and the items sought (heroin/fentanyl, paraphernalia associated with drug trafficking, drug proceeds, and weapons). The affidavit detailed the investigation into Campbell's drug-trafficking activities, including attempted and successful controlled purchases from him, his arrests for drug paraphernalia and drug trafficking, information from confidential and anonymous sources, and multiple hand-to-hand transactions observed by the officers in the weeks leading up to the warrant application. The affidavit also provided facts indicating that Campbell lived at the Meadowind Court address: ping data from his cell phone tied him to that location, the officers observed him entering and exiting the house on multiple occasions and using a key to lock the door, he drove vehicles registered to that address, and he was arrested for a domestic violence incident that occurred at that location. In the affidavit, Officer Casch stated that in his experience "heroin dealers commonly maintain quantities of heroin, currency from past sales, records from past sales, packaging materials, as well as other items used to facilitate their illegal business at the residences and vehicles they use to facilitate those sales." Because Officer

Casch's affidavit provided the "minimally sufficient" nexus and therefore exceeded the low "bare-bones" bar, the district court properly denied Campbell's motion to suppress based on the good-faith exception.

**B.     Speedy Trial**

Campbell challenges the district court's denial of his motion to dismiss the indictment under the Speedy Trial Act; he does not challenge the denial of his motion on constitutional grounds. We "review de novo the district court's interpretation of the Speedy Trial Act and its factual findings for clear error." *United States v. White*, 920 F.3d 1109, 1112 (6th Cir. 2019).

"The Speedy Trial Act requires that the government try a criminal defendant within 70 days (with certain delays excused) of the defendant's indictment or first court appearance, whichever comes later." *United States v. Tolliver*, 949 F.3d 244, 246 (6th Cir. 2020) (per curiam). The district court determined that, due to various motions and continuances, only 33 days had elapsed on Campbell's speedy-trial clock between his indictment on March 6, 2019, and the April 20, 2021 order denying the motion to dismiss.

Campbell objects to the district court's exclusion of the period beginning April 19, 2020— 30 days after the government responded to his motion to suppress. *See* 18 U.S.C. § 3161(h)(1)(H). Campbell argues that the district court's lack of diligence in allowing his motion to suppress to linger for a year restarted the speedy-trial clock. But the Speedy Trial Act excludes any period of "delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion." 18 U.S.C. § 3161(h)(1)(D). Campbell requested an evidentiary hearing on his motion to suppress on February 15, 2020 and moved for a *Franks* hearing on February 17, 2020; the district court granted his motion for a *Franks* hearing on April 19, 2021, and conducted an evidentiary hearing on both motions on April 27,

2021. The Supreme Court has held that, "when a pretrial motion requires a hearing," the Speedy Trial Act excludes "all time between the filing of a motion and the conclusion of the hearing on that motion, whether or not a delay in holding that hearing is 'reasonably necessary.'" *Henderson v. United States*, 476 U.S. 321, 329–30 (1986). While Campbell complains about the time the district court took to schedule a hearing on his motion to suppress, all of the time between the filing of that motion, along with his motion for a *Franks* hearing, and the conclusion of the hearing on those motions was automatically excluded. The district court therefore did not err in excluding that time and denying Campbell's motion to dismiss.

## C.     Prior Drug Sales

Campbell contends that the district court erred in admitting evidence of his prior drug sales—the hand-to-hand transactions in front of the 69th Street address observed by officers on October 2, 3, 11, and 15, 2018. We generally review the district court's evidentiary ruling for an abuse of discretion. *United States v. Jaffal*, 79 F.4th 582, 594 (6th Cir. 2023).

In accordance with Federal Rule of Evidence 404(b), the government gave notice of its intent to use evidence of Campbell's prior drug trafficking to prove that he possessed the drugs found during the October 18, 2018, search with intent to distribute them. When discussing the issue with the parties, the district court questioned whether this evidence—in particular, the transactions outside the 69th Street address—should be considered "intrinsic" evidence, which would not implicate Rule 404(b). The district court allowed the evidence and gave a cautionary instruction about other-acts evidence.

Under Rule 404(b), "[e]vidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). But "Rule 404(b) does not apply when the prior bad

act forms the basis of the charges for which a defendant is being tried." *United States v. Sadler*, 24 F.4th 515, 554 (6th Cir. 2022). "That is, if evidence is intrinsic, Rule 404(b) will not apply as long as the acts are part of a single criminal episode." *Id.* (cleaned up). "Intrinsic acts are those that are inextricably intertwined with the criminal act charged or a part of the criminal activity as opposed to extrinsic acts, which are those that occurred at different times and under different circumstances from the offense charged." *United States v. Churn*, 800 F.3d 768, 779 (6th Cir. 2015) (quoting *United States v. Stafford*, 198 F.3d 248, at *4 (6th Cir. 1999) (table)). "[E]vidence relating to the background of the charged offense, known as '*res gestae* evidence,' is also considered 'intrinsic' and admissible." *United States v. Sumlin*, 956 F.3d 879, 889–90 (6th Cir. 2020). Such "evidence has a causal, temporal or spatial connection with the charged offense" and typically "is a prelude to the charged offense, is directly probative of the charged offense, arises from the same events as the charged offense, forms an integral part of a witness's testimony, or completes the story of the charged offense." *Id*. at 890 (quoting *United States v. Hardy*, 228 F.3d 745, 748 (6th Cir. 2000)).

The evidence that Campbell was selling drugs out of the 69th Street residence in the two to three weeks leading up to the execution of the search warrant at the same location on October 18, 2018, was admissible as intrinsic evidence of Counts 2 and 3, which charged him with possessing with intent to distribute fentanyl and cocaine on October 18. Officers testified that, after receiving drug complaints about the 69th Street residence in early October, they began to conduct surveillance at that residence and observed Campbell meeting people and making apparent drug sales on multiple occasions. Evidence of these transactions, in part, formed the basis for Casch's search warrant affidavit. Upon the execution of the search warrant at the 69th Street

residence on October 18, the officers found narcotics, including fentanyl and cocaine, and arrested Campbell.

Considering the causal, temporal, and spatial connection between Campbell's prior drug sales at the 69th Street location and the offenses charged in Counts 2 and 3, the officers' testimony about the prior drug sales constituted intrinsic evidence. *See United States v. Johnson*, 95 F.4th 404, 417–18 (6th Cir.), *cert. denied*, 144 S. Ct. 2619 (2024). The testimony "establish[ed] a pattern of drug deals occurring" at the 69th Street residence, "which in turn shed[] light on [Campbell's] relationship to the residence and the drugs found there." *United States v. Chalmers*, 554 F. App'x 440, 451 (6th Cir. 2014). The district court therefore did not abuse its discretion in admitting the evidence of Campbell's prior drug sales at the 69th Street location. Because we find that the district court did not err in admitting that intrinsic evidence, we need not address Campbell's Rule 404(b) arguments. *See Johnson*, 95 F.4th at 418 n.5.

**D.     Officer's Opinion Testimony**

According to Campbell, Officer Casch provided expert opinion testimony when he (1) testified about the mechanisms of using of a confidential informant to coordinate a controlled purchase, (2) interpreted drug slang in text messages, and (3) discussed the contents of those messages. Campbell argues that the district court erred in allowing Officer Casch to give this opinion testimony because he was not disclosed as an expert before trial and because no contemporaneous limiting instruction was given to the jury about the use of his testimony. Campbell did not raise these objections to Officer Casch's testimony at trial, so we review for plain error. *See United States v. Barron*, 940 F.3d 903, 920 (6th Cir. 2019).

At the time of Campbell's trial, Federal Rule of Criminal Procedure 16(a)(1)(G) required the government to disclose, at the defendant's request, a written summary of any expert testimony

that the government intended to use during its case-in-chief. *See* Fed. R. Crim. P. 16(a)(1)(G) (prior to Dec. 1, 2023). Campbell contends that the government's use of Officer Casch as an expert witness without prior disclosure constituted reversible error. But Campbell did not object to Officer Casch's testimony on this basis. "For us to find plain error, [Campbell] must show the occurrence of an obvious or clear error that affected his substantial rights and the trial's fairness, integrity, or public reputation." *United States v. Brown*, 737 F. App'x 741, 747 (6th Cir. 2018). "In order to show that the error affected his substantial rights, [Campbell] must show that the error was prejudicial, 'which means that there must be a reasonable probability that the error affected the outcome of the trial.'" *Id*. (quoting *United States v. Marcus*, 560 U.S. 258, 262 (2010)).

Although the government did not disclose Officer Casch as an expert witness, defense counsel was able to cross-examine him about the use of the confidential informant and about Campbell's text messages. Campbell has failed to explain how the government's failure to disclose Officer Casch as an expert witness affected his substantial rights or the outcome of the trial. *See United States v. Martinez*, 839 F. App'x 993, 998 (6th Cir. 2021); *United States v. Ledbetter*, 929 F.3d 338, 348–50 (6th Cir. 2019).

Campbell also objects to the district court's failure to give the jury a contemporaneous limiting instruction about the use of Officer Casch's testimony. "We have recognized that 'when a police officer testifies in two different capacities in the same case, there is a significant risk that the jury will be confused by the officer's dual role.'" *Barron*, 940 F.3d at 920 (quoting *United States v. Thomas*, 74 F.3d 676, 682 (6th Cir. 1996)). However, we have "permitted an officer's dual testimony as a fact and expert witness when an adequate cautionary jury instruction was provided." *United States v. Young*, 847 F.3d 328, 357 (6th Cir. 2017).

According to Campbell, the district court should have given a limiting instruction contemporaneously with Officer Casch's testimony. But Campbell fails to cite any authority requiring a contemporaneous instruction. At the conclusion of the case, the district court instructed the jury about witnesses testifying to both facts and opinions. The instruction did not mention Officer Casch by name. But Campbell requested this instruction refer to witnesses generally rather than naming a specific witness. This instruction mirrored the pattern jury instruction about dual-role witnesses and the cautionary instruction given in *Barron*. *See* Sixth Circuit Pattern Jury Instruction 7.03A, *Witness Testifying to Both Facts and Opinions* (Mar. 2023); *see also Barron*, 940 F.3d at 920–21. Campbell has failed to show that the district court plainly erred where it gave the jury an adequate cautionary instruction at the end of the case.

### E.     Acquitted Conduct

Campbell argues that the district court violated his Sixth Amendment right to a jury trial by using acquitted conduct, the possession of the firearms found at the 69th street address, to increase his advisory Sentencing Guidelines range. We review this constitutional challenge *de novo*. *See United States v. Moore*, 643 F.3d 451, 454 (6th Cir. 2011).

The jury acquitted Campbell of the firearm counts. When sentencing Campbell on the drug counts, the district court applied a two-level enhancement for possessing a firearm under USSG § 2D1.1(b)(1). Although the district court expressed concern with relying on acquitted conduct at sentencing, it found by a preponderance of the evidence that it was not clearly improbable that a firearm located in close proximity to controlled substances in the living room of the 69th Street residence was connected to Campbell's drug offenses. *See* USSG § 2D1.1, cmt. n.11(A).

As the district court recognized, "it is settled that acquitted conduct may be considered at sentencing if the facts are proven by a preponderance of the evidence." *United States v. Hills*,

27 F.4th 1155, 1196 n.24 (6th Cir. 2022). We have held that the Sixth Amendment does not prevent "a district court from relying on acquitted conduct in applying an *advisory* guidelines system." *United States v. White*, 551 F.3d 381, 384 (6th Cir. 2008) (en banc). "So long as the defendant receives a sentence at or below the statutory ceiling set by the jury's verdict, the district court does not abridge the defendant's right to a jury trial by looking to other facts, including acquitted conduct, when selecting a sentence within that statutory range." *Id.* at 385. Because Campbell received a sentence well below the 40-year statutory maximum penalty set by the jury's verdict, the district court's consideration of acquitted conduct did not run afoul of the Sixth Amendment.

## F.    Drug-Premises Enhancement

Campbell argues that the district court erred in applying a sentencing enhancement under USSG § 2D1.1(b)(12), which provides for a two-level increase "[i]f the defendant maintained a premises for the purpose of manufacturing or distributing a controlled substance." This "enhancement applies to anyone who (1) knowingly (2) opens or maintains any place (3) for the purpose of manufacturing or distributing a controlled substance." *United States v. Taylor*, 85 F.4th 386, 389 (6th Cir. 2023) (quoting *United States v. Johnson*, 737 F.3d 444, 447 (6th Cir. 2013)). With respect to the drug-premises enhancement, we review the district court's factual findings for clear error and its legal interpretations *de novo*. *United States v. Tripplet*, 112 F.4th 428, 432 (6th Cir. 2024).

According to Campbell, there was no proof that he "opened or maintained" the 69th Street residence. Appellant's Br., ECF No. 21, 40. Campbell asserts that it was Natasha Rush's residence, not his. But "even without a 'legal interest in the premises, the enhancement may still apply if the government makes a sufficient showing of de facto control.'" *Taylor*, 85 F.4th at 390

(quoting *United States v. Hernandez*, 721 F. App'x 479, 484 (6th Cir. 2018)). "That control need not be either exclusive or continuous." *Id.*

Officers testified that, according to the ping data from Campbell's cell phone, he split his time between the Meadowind Court and the 69th Street addresses. At the 69th Street location, the officers observed Campbell conducting drug transactions. In conducting these transactions, Campbell freely entered and exited the 69th Street residence and let other individuals inside. Text messages showed that Campbell directed his customers to the 69th Street location to buy drugs. Based on this evidence, the district court did not clearly err in finding that Campbell exercised a sufficient level of control over the 69th Street residence to support application of the drug-premises enhancement.

Campbell also argues that there was no evidence that drug dealing was the primary or principal use of the 69th Street residence. "Manufacturing or distributing a controlled substance need not be the sole purpose for which the premises was maintained, but must be one of the defendant's primary or principal uses for the premises, rather than one of the defendant's incidental or collateral uses for the premises." USSG § 2D1.1, cmt. n.17. "At bottom, the question is whether [the 69th Street residence] 'played a significant part' in distributing drugs." *United States v. Bell*, 766 F.3d 634, 637 (6th Cir. 2014) (quoting *Johnson*, 737 F.3d at 449).

As addressed above, the evidence showed that Campbell used the 69th Street residence to conduct drug transactions. When the officers executed the search warrant at the 69th Street location, they found significant quantities of multiple drugs, including fentanyl, cocaine, and methamphetamine, as well as other items related to drug trafficking, such as firearms, scales, sandwich bags, and cutting agents. The drug transactions conducted at the 69th Street location along with the drugs and drug-related items found in the house indicated that the residence played

a significant part in Campbell's distribution of drugs. *See id*. at 637–38; *Tripplet*, 112 F.4th at 432–33. The district court therefore did not err in applying the drug-premises enhancement.

## G. Pro Se Arguments

### 1. Staleness of Count 1

Campbell asserts that Count 1 was stale because the controlled purchase occurred on June 8, 2018, but he was not charged with that offense until March 6, 2019. "[T]he Due Process Clause of the Fifth Amendment protects against oppressive pre-indictment delay." *United States v. Schaffer*, 586 F.3d 414, 424 (6th Cir. 2009). "To establish that a delay violates due process, defendants . . . must meet what we have called a 'nearly insurmountable' burden." *United States v. Harvel*, 115 F.4th 714, 728 (6th Cir. 2024) (quoting *United States v. Rogers*, 118 F.3d 466, 477 n.10 (6th Cir. 1997)). A defendant must prove (1) "that the delay caused concrete prejudice to the defense" and (2) "that the government engaged in the delay with the bad-faith motive 'to gain a tactical advantage' in the litigation." *Id.* (quoting *Schaffer*, 586 F.3d at 424). Campbell has failed to show that the nine-month delay in indicting him for selling fentanyl to the confidential informant caused any prejudice to his defense or that "the delay resulted from anything other than the government's continued investigation." *Id*.

### 2. Confidential Informant

According to Campbell, the government violated *Brady v. Maryland*, 373 U.S. 83 (1963), by failing to disclose the financial contract made with the confidential informant to testify against him. "There are three components of a true *Brady* violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281–82 (1999). Defense counsel's cross-examination

of the confidential informant indicated that information about his payment was not withheld by the government; the informant acknowledged the payment. And given that defense counsel questioned the confidential informant about his payment for assisting the government, Campbell cannot show prejudice—that is, "that there is a reasonable probability that the suppressed evidence would have produced a different verdict." *Id.* at 281.

Campbell also contends that Officer Casch and Officer Brian Follrod engaged in "witness tampering." The portion of the trial record cited by Campbell in support of this argument merely demonstrates that the officers met with the confidential informant and showed him the video and still photos of the controlled purchase in preparation for his trial testimony; it does not indicate that the officers engaged in any misconduct.

### 3. Sufficiency of the Evidence for Counts 2 and 3

Campbell challenges the sufficiency of the evidence for Counts 2 and 3. We review *de novo* a challenge to the sufficiency of the evidence. *United States v. Rosales*, 990 F.3d 989, 994 (6th Cir. 2021). When reviewing the sufficiency of the evidence, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). "In making this determination, however, we may not reweigh the evidence, reevaluate the credibility of witnesses, or substitute our judgment for that of the jury." *United States v. Martinez*, 430 F.3d 317, 330 (6th Cir. 2005).

Counts 2 and 3 of the superseding indictment charged Campbell with possession with intent to distribute fentanyl (Count 2) and cocaine (Count 3), in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B)–(C). "To convict a defendant of possession with the intent to distribute, the government must show (a) the defendant knowingly (b) possessed a controlled substance

(c) with the intent to distribute." *United States v. Hall*, 20 F.4th 1085, 1106 (6th Cir. 2022) (cleaned up).

Campbell argues that there was insufficient evidence that he possessed the drugs found at the 69th Street residence. The government need not prove "actual possession of the substances; 'constructive' or 'joint' possession suffices." *Id.* "Constructive possession requires that a person knowingly have power and intention to exercise control over an object." *Sadler*, 24 F.4th at 550 (quoting *United States v. Critton*, 43 F.3d 1089, 1096 (6th Cir. 1995)).

When the officers executed the search warrant at the 69th Street address, they found Campbell on an air mattress in the front living room. Near the mattress was a cabinet, in which the officers discovered fentanyl, cocaine, and methamphetamine. Campbell argues that he did not live at the 69th Street address and was merely visiting a friend. But according to the ping data from Campbell's cell phone, he split his time between the Meadowind Court and the 69th Street addresses. Although other people were present when the officers searched the 69th Street residence, "for a jointly occupied home, constructive possession can be demonstrated through 'minimal,' purely circumstantial evidence connecting one occupant to the contraband." *United States v. Latimer*, 16 F.4th 222, 227 (6th Cir. 2021) (citing *United States v. Walker*, 734 F.3d 451, 455–56 (6th Cir. 2013)). The testimony indicating that Campbell conducted drug transactions at the 69th Street location and the text messages showing that he directed his customers to that address to buy drugs provided circumstantial evidence connecting him to the drugs found in the cabinet. Campbell also argues that his DNA was not found on the drugs. But drug possession may be established with circumstantial evidence, "and such evidence need not 'remove every reasonable hypothesis except that of guilt.'" *Hall*, 20 F.4th at 1106 (quoting *United States v. Morgan*, 469 F.2d 83, 83 (6th Cir. 1972)). Viewing the evidence in the light most favorable to the

government, we conclude that a rational trier of fact could have found that Campbell constructively possessed the drugs found in the cabinet at the 69th Street residence.

**4.      Statutory Penalties**

Citing *Erlinger v. United States*, 602 U.S. 821 (2024), Campbell argues that the Fifth and Sixth Amendments required a jury to decide whether his prior convictions were part of the same criminal episode and whether those convictions increased the statutory minimum and maximum penalties.  The *Erlinger* case involved the Armed Career Criminal Act (ACCA), which increases the statutory penalties for a defendant convicted under 18 U.S.C. § 922(g) if the defendant has three prior convictions "for a violent felony or a serious drug offense, or both, committed on occasions different from one another."  18 U.S.C. § 924(e)(1).  In *Erlinger*, the Supreme Court held that the Fifth and Sixth Amendments require a jury to decide unanimously and beyond a reasonable doubt whether a defendant's ACCA predicates were committed on different occasions. 602 U.S. at 835.  The *Erlinger* case is inapplicable here because Campbell was neither convicted under § 922(g) nor sentenced under the ACCA.

Campbell asserts that the district court raised his statutory penalties from five to 40 years to ten years to life based on his status as a career offender.  If the government had given notice of its intent to seek increased statutory penalties based on Campbell's prior drug convictions, he would have been subject to a minimum of ten years and a maximum of life for Count 2.  *See* 21 U.S.C. §§ 841(b)(1)(B), 851.  But the government did not give such notice.  The district court applied a minimum of five years and a maximum of 40 years for Count 2, which resulted in an offense level of 34 under the career-offender guideline.  *See* 21 U.S.C. § 841(b)(1)(B); USSG § 4B1.1(b).  Campbell's arguments about the statutory penalties are misplaced.

## III.

For these reasons, we **DENY** Campbell's request for removal of his counsel and to strike his brief, and we **AFFIRM** the district court's judgment.